# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* A.G., J.F.-1, and D.F.

No. 17-0875 (Gilmer County 16-JA-10, 11, and 14)

**FILED**

**March 12, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother S.H., by counsel Jared S. Frame, appeals the Circuit Court of Gilmer County's September 5, 2017, order terminating her parental rights to A.G., J.F.-1, and D.F.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Mary Elizabeth Snead, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred by terminating her parental rights when the conditions of abuse and neglect were correctable and she had begun making improvements during the proceedings.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2016, Child Protective Services ("CPS") opened a case with petitioner and J.F.-2, the father of J.F.-1 and D.F., to address concerns with the parents' caregiving capabilities. The children did not have an adequate living situation, as they moved from home to home on a nearly daily basis. CPS implemented a safety plan with services to address its concerns; however, in July of 2017, the children were removed from the home pursuant to an emergency order. Shortly thereafter, the DHHR filed an abuse and neglect petition against the parents and alleged that they failed to comply with the safety plan. Specifically, law enforcement officers responded to the parents' home after receiving calls regarding a domestic violence incident. Officers responded to the home multiple times that day and observed J.F.-2 to have teeth marks and swollen skin on his forearm. Additionally, petitioner was observed to have marks on her

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and his father share the same initials, we will refer to them as J.F.-1 and J.F.-2, respectively, throughout this memorandum decision.

1

forearms and wrists, a bruise under her eye, and strangulation marks around her neck. The DHHR alleged that the parents engaged in domestic violence after petitioner requested that J.F.-2 take her to obtain Subutex pills and he refused. Two of the children were present in the home during this event. Both petitioner and J.F.-2 were arrested for domestic battery.

The circuit court held an adjudicatory hearing in August of 2016, during which petitioner stipulated to allegations contained in the petition. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent.[2]

In October of 2016, the circuit court granted petitioner a post-adjudicatory improvement period. As part of the terms and conditions, petitioner was required to (1) participate in adult life skills classes, parenting classes, individual counseling sessions, domestic violence counseling sessions, substance abuse counseling sessions, and any other services the DHHR deemed necessary; (2) submit to a substance abuse evaluation; and (3) submit to random drug and alcohol screening before supervised visitation with the children was initiated.

In March of 2017, the guardian moved the circuit court to revoke petitioner's post-adjudicatory improvement period and terminate her parental rights. In support of her motion, the guardian stated that, in February of 2017, petitioner refused to appear for an alcohol screen on two separate occasions. Later in February, petitioner appeared for an alcohol screen but tested positive on the preliminary screen; an oral swab was sent to the lab for confirmation. The guardian further alleged that petitioner was essentially homeless for a period of time, having been asked to leave her former residence. Additionally, petitioner admitted during her substance abuse evaluation that she had abused opioids since the age of fifteen and alcohol since the age of eighteen. The evaluator's diagnostic impression was severe opioid use disorder.

Later in March, the circuit court held a review hearing wherein petitioner requested an extension to her post-adjudicatory improvement period. The circuit court reinstated supervised visitation on the condition that petitioner submit to drug and alcohol screens before each visit and at any other time requested by the DHHR.

After several continuances, the circuit court held a dispositional hearing in August of 2017, during which several witnesses testified as to petitioner's noncompliance throughout her improvement period. A service provider testified that petitioner continued to abuse alcohol during the improvement period because she believed that it was permissible as long as she did not have the children, despite attempts by the service provider to explain that alcohol use was prohibited. While the service provider believed that petitioner began complying more with the services throughout the improvement period, she did not believe that petitioner made any

---

[2]While the circuit court adjudicated petitioner as an "abusing and neglecting parent[,]" we note that the phrase "neglecting parent" does not appear in the statutory framework for abuse and neglect proceedings in this State. Instead, West Virginia Code § 49-1-201 defines "abusing parent" as "a parent . . . whose conduct has been adjudicated by the court to constitute child abuse *or neglect* as alleged in the petition charging child abuse *or neglect*." (Emphasis added.) As such, the Court will refer to petitioner as an "abusing parent" in this memorandum decision, as that phrase encompasses parents who have been adjudicated of abuse and/or neglect.

progress due to her continued relationship with J.F.-2. Another service provider testified that petitioner was not consistently compliant and cooperative with her parenting classes until after she ended her relationship with J.F.-2. The service provider, after learning of petitioner's recent positive drug screen, also testified that she did not believe that petitioner could correct her substance abuse in the near future because, in addition to receiving services throughout the proceedings, she previously had been in intensive treatment programs, including a Suboxone program and a Methadone program, and yet failed to remedy the issue. A CPS worker testified that the DHHR recommended termination because petitioner continued to have a substance abuse problem, did not report the instances of domestic violence against her, and did not timely cooperate with the DHHR. Further, the CPS worker indicated that petitioner had been the subject of prior referrals due to wrecking her car while intoxicated with a child present and giving birth to two children who had drugs in their systems.

Petitioner testified that she ended her relationship with J.F.-2 in May of 2017, after he sexually assaulted her and that she began making improvements with the services provided. Petitioner testified that she only had one week of her intensive treatment program remaining and that the positive drug screen she had recently produced in July of 2017 was due to medication prescribed for seizures. Despite the drug screen showing traces of methamphetamine, petitioner insisted that she had not abused that substance. Petitioner also admitted to domestic violence in the home throughout the improvement period, but stated that she sought counseling after leaving her abusive relationship. After hearing evidence, the circuit court found that petitioner continued to abuse alcohol, failed to comply with services, and engaged in domestic violence throughout the proceedings and, therefore, revoked her post-adjudicatory improvement period. Further, petitioner had a lengthy history of drug abuse and tested positive for methamphetamine as recently as July of 2017, after extensive substance abuse treatment. Accordingly, the circuit court terminated petitioner's parental rights upon findings that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare.[3] It is from the September 5, 2017, dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply

---

[3]The parental rights of J.F.-2 were also terminated during the proceedings below. The permanency plan for J.F.-1 and D.F. is adoption by either their foster family or a relative. The petition against A.G.'s father was dismissed after he successfully completed an improvement period. The permanency plan for A.G. is to remain with her father.

because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights when the conditions of abuse and neglect were correctable and she had begun making improvements in that regard. Specifically, petitioner argues that she separated from her abuser, began attending counseling sessions, and remained free from drugs and alcohol. However, we find petitioner's argument to be meritless. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. According to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[.]

Contrary to her argument, petitioner failed to follow through with rehabilitative efforts aimed at correcting the conditions of abuse and neglect. Petitioner was granted an improvement period in October of 2016 and was instructed to participate in several services targeting substance abuse and domestic violence. Testimony at the dispositional hearing established that, despite having attended these services, petitioner did not progress due to her refusal to end her relationship with J.F.-2. Petitioner knew that she was adjudicated, in part, based upon allegations of domestic violence, yet she did nothing to separate herself from the situation. Petitioner testified at the dispositional hearing that domestic violence in the home continued throughout the proceedings and intensified after March of 2017, but that she did not leave until May of 2017, well after her improvement period expired. Petitioner also refused to report the domestic violence incidents.

Further, petitioner either tested positive for alcohol or refused to submit for screening three times during her improvement period. The record demonstrates that petitioner received extensive treatment prior to the proceedings through a Suboxone program and a Methadone program, and received services addressing substance abuse both during her improvement period and after its expiration, yet tested positive for methamphetamine as recently as July of 2017. Petitioner's argument that she simply needed more time to comply with services after leaving an abusive situation is unpersuasive in light of the fact that she abused alcohol and drugs well before entering into a relationship with J.F.-2, and continued to do so despite being afforded

4

substantial time and resources to overcome her addiction. While petitioner argues that less-restrictive alternatives to termination were available, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Petitioner had a significant history of alcohol and drug abuse that she refused to correct and continued to participate in domestic violence throughout the proceedings below. Moreover, petitioner failed to meaningfully participate in her improvement period and only sought treatment after it had expired. Based upon the evidence, we find that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect and that termination was necessary for the children's welfare. As such, the circuit court did not err in terminating her parental rights.

Lastly, because the proceedings in circuit court regarding the placement of J.F.-1 and D.F. are still ongoing, this Court reminds the circuit court of its duty to establish permanency for these children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide

custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 5, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  March 12, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker